## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

LINDA PEACOCK,                         :

      Plaintiff,                      :

vs.                                    :        CA 05-0377-BH-C

BURNEY H. MERRILL, et al.,             :

      Defendants.

## ORDER

This cause is before the Court on the Merrill defendants' motion to compel as to Disk #2 (Doc. 390), plaintiff's reply (Doc. 397), the Merrill defendants' rebuttal (Doc. 408), plaintiff's surreply (Doc. 411), and the Merrill defendants' notice of supplemental authority (Doc. 443). Having considered the contents of these pleadings, and the attachments thereto, this order is entered pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.2(a).

## PROCEDURAL BACKGROUND

1.      On May 18, 2007, the Merrill defendants filed a motion to compel production of plaintiff's most recent tax returns as well as electronic information, specifically "a full and complete inspection of electronic

information contained on a certain disk bate-stamp number 'Peacock 20441'"[1]

and "'Disk #2.'" (Doc. 242, at 1) Plaintiff responded on June 5, 2007 that the

motion to compel was moot. (Doc. 307)

       3.    First, a floppy disk-The Merrill Defendants have demanded access to the data on a damaged floppy disk.

       4.    The floppy disk, by agreement, had been examined previously by a local computer service company, The Computer Broker (renamed the Computer Professional). The Agreement is attached.[2]

---

[1]    Peacock 20441 has been referred to as Disk 1. (*See* Doc. 242, at 1)

[2]    This agreement reads, in relevant part, as follows:

The examination of the disk will take several steps:

First, our office will make the disk available to you for your examination in our office only. The examination of the disk will be conducted either by non-destructive measures, or will be solely conducted on a copy of the "original" disk, in order to protect the data on the "original" disk.

Second, you will provide counsel for Linda Peacock all data recovered from the disk in a hard copy form (if possible and, if not, in an electronic form). In the event the data can be printed, each page will be printed, and marked with a Bates labeled with the prefix "Peacock" and numbered sequentially, in the previously established order. The total number of pages will be reported to counsel for both parties.

Third, counsel for Linda Peacock will conduct a privilege review of the data. Any and all privileged data will be identified for you, and for counsel to the Merrills by counsel for Linda Peacock. In addition, counsel for Linda Peacock will also identify any confidential or irrelevant information, as well as information protected by the Attorney Work Product Doctrine.

Fourth, you agree not to disclose, either directly or indirectly, to anyone other than counsel for Linda Peacock any data identified as privileged,

5.    The floppy disk held Quick Books data or Quicken data (which could not be opened, read or printed) and pages of text (which were printed and produced).

6.    The Computer Professional suggested that perhaps Quick Books or Quicken could open the data files.

7.    After a diligent search, counsel for Linda Peacock was not able to engage the Data Recovery Services of Intuit, the owner of the Quick Books and Quicken software. As a result, counsel for Linda Peacock engaged The Computer Professional to do so.

8.    Documents recovered by Intuit, if any, will be produced pursuant to the written Agreement.

9.    <u>Second, a second computer disk</u>-The computer disk has been located and the responsive documents have been produced or listed on a privilege log.

10.    Linda Peacock objects to the production of the computer disk itself on the following grounds:

A.    Hard-copy documents of all responsive documents have been produced or have been listed on a privilege log. As a practical matter, it appears that this hard-copy production is a duplication of previous hard-copy production in material respects.

---

confidential, irrelevant or protected by the Attorney Work Product Doctrine.

Fifth, counsel for Linda Peacock will provide to counsel for the Merrills all data not withheld as confidential, irrelevant, privileged, or protected by the Attorney Work Product Doctrine. Documents withheld from production will be identified on a privilege log in a form consistent with the requirements of Court in this matter.

(Doc. 307, Exhibit A)

3

> B.   The disk itself contains documents which are privileged, are confidential, are not relevant, and will not lead to the introduction of relevant evidence.
>
> C.   Linda Peacock objected to the production of privileged and confidential information.
>
> D.   Rule 26(b), Federal Rules of Civil Procedure, limits discovery to relevant information or information which is reasonably calculated to lead to the discovery of admissible evidence. The production of the disk itself violates the limitation of Rule 26(b).
>
> .     .     .
>
> 11.   Third, Linda Peacock's tax returns for 2004, 2005 and 2006 The tax returns for 2004 and 2005 have been produced. There is no tax return for 2006.

(*Id.* at 1-3 & 5 (internal footnote and citations omitted; footnote added))

2.   At a hearing held in this case on June 7, 2007, counsel for the Merrill defendants agreed that its motion to compel production of plaintiff's tax return information was moot, same having been provided. Moreover, counsel for the Merrill defendants informed the Court that its motion to compel Disk 1 data was not ripe for review in light of the fact that a copy of the damaged disk had been forwarded to Intuit, the owner of the Quick Books software, for recovery of electronic data. However, counsel for the Merrill defendants would not agree that the motion to compel electronic data from Disk 2 was moot; in fact, counsel stated the Merrill defendants wanted

4

production of Disk 2. After hearing the arguments by counsel for plaintiff[3] and the Merrill defendants, the undersigned ordered plaintiff to extract from Disk 2 all relevant, non-privileged information and produce it to the Merrill defendants in electronic form. (*See* Doc. 310, at 2 ("The parties agreed to a plan to have the relevant and non-privileged information that is stored on the single disc at issue produced in a usuable electronic format.")) Plaintiff supplied the Merrill defendants with what she considered to be the relevant, non-privileged documents off of Disk 2, on June 28, 2007, in appropriate electronic format. (*See* Doc. 356, at ¶ 4)

3.     On August 2, 2007, the Merrill defendants filed a motion to compel production by Peacock of the Disk 2 directory of documents. (Doc. 356) Counsel for the Merrill defendants were concerned that relevant documents might have been erased from the heavily edited copy of Disk 2 produced to them. (*See id*.) Following an evidentiary hearing on August 30, 2007, during which the relevant parties argued this motion, the Court, on September 6, 2007 granted the Merrill defendants' motion to compel the disk directory. (*See* Doc. 377) "This production will allow the other parties, and

---

[3]     Counsel for plaintiff argued that the motion to compel production of Disk 2 was due to be denied because plaintiff had produced, in hard copy form, all relevant, non-privileged documents on the disk.

possibly the Court, to determine if all relevant and nonprivileged documents have been produced as required by previous order." (*Id.*)

    4.    Based upon the number of documents listed on the disk directory in comparison to the number of documents electronically produced, the Merrill defendants, on September 25, 2007, filed the instant motion to compel production of Disk 2. (Doc. 390)[4]

---

[4]    Prior to the filing of this most recent motion to compel, counsel for the relevant parties exchanged letters. (*See* Doc. 390, Exhibits E & M) Counsel for the Merrill defendants wrote to plaintiff's counsel on September 7, 2007 the following letter:

    I have reviewed the "hard copy" of the disk directory. Now that I have reviewed the titles, and learned that documents you deleted included "Quicken" accounting files as well as "Word" files, I am particularly concerned that you and I have different ideas as to what is relevant or potentially relevant. As we have discussed before, and as supported by authorities cited in my briefing to the Court, I do not believe it is appropriate for you to make the decision as to which documents are relevant or potentially relevant. You cannot be expected to know all of my theories of the case; nor am I obligated to reveal to you my mental impressions as to all of my theories.

    Given these facts, I ask that you provide us with an exact electronic copy of the CD-ROM Disk #2 that includes *all documents* in electronic form except those 10 documents on which you have claimed privilege. As with all discovery, objections as to admissibility and relevancy are reserved, and you can argue lack of relevancy should we list a document you believe to be irrelevant on our exhibit list.

    If there is a document that is of particular "privacy," please highlight that document on the disk printout when producing to us the unedited (with exception of privilege) CD-ROM. If we disagree with you that the document is private and has no relevance, we can submit that issue to the Court. If we agree, we will promptly delete the document from the disk, and verify to you in writing that it has been deleted. I am confident we can agree on those issues once we have had an opportunity to review the document.

_____

There are some documents, however, that may be "private" and totally lacking in relevance *in part* (such as a "love letter" between Ms. Peacock and her ex-husband), that has a sentence or two that discusses the Floragon stock, or some other issue that does have potential relevance. We are in the best position to make that determination, as only we know our "theories of the case."

Please let me know if you will comply with our request for production of a true and accurate electronic copy of the CD-ROM disk we have referred to as Disk #2, the disk from which the 54-page "hard copy" of the index was printed. If you will not, I request a telephone conference to discuss this issue in an attempt to reach an agreement. I would suggest 2 p.m. on Tuesday, September 11, 2007. If that is not a convenient time for you, please suggest an alternate date and time, and I will be glad to accommodate your schedule.

(Doc. 390, Exhibit M) Thereafter, counsel for the Merrill defendants penned the following letter to plaintiff's counsel on September 10, 2007:

I am in receipt of your letter of September 10th, 2007. . . .

I would note the proposals outlined in your letter were not discussed in our "meet and confer" conference held earlier today at your request versus the time I had scheduled for Tuesday. Although none of your proposals are acceptable, it would have been helpful to have [been] presented [them] either before or during our "meet and confer" conferences. A primary reason for this request is I have spent much of the morning drafting our Motion to Compel, devoting time to that task after and only after an impasse was reached. Had any of your proposals been satisfactory, the time spent in drafting the Motion to Compel would have been an unnecessary expense for our clients.

None of your three suggestions for settlement are acceptable. Based on titles alone, there are non-privileged documents you have intentionally deleted from a disk the Court ordered produced that are, at a very minimum, potentially relevant or may contain information that could lead to relevant evidence. The Merrill Defendants should not have to pay for the right to review those documents themselves versus relying on your unilateral determination that the documents are not relevant, potentially relevant, nor reasonably calculated to lead to relevant evidence. Nor should the Merrills be required to delegate that task to an attorney other than their attorneys, the ones most familiar with the facts of this case, including their theories of the case.

There is no burden on you to produce an exact copy of Disk #2 less privileged documents. You have rejected a resolution that had been acceptable to you for handling *even privileged documents* produced by third parties. Any legitimate claims of "personal" can be accommodated, as outlined in my letter of September 7th. I would note your client's threshold for "personal" must be fairly high, as she produced several "love letters" from her ex-husband in prior document productions. Even those letters may have contained discovery information. For example, they could be used as evidence of lack of animosity between the Plaintiff and Mr. Uter at the time they were written. Even today, I could not rule out their *potential* relevance. You may have some other potentially relevant uses for those letters I am not aware of, and do not have a "right" to be aware of, as this would infringe on "mental impressions of counsel." My point is one made repeatedly by federal courts; relevancy for discovery purposes is extremely broad.

You have gone to great effort, causing the Merrill Defendants great expense, to delete hundreds of documents from a disk you were ordered by the Court to produce. Your claim of "irrelevant" has a hollow ring given your claim that computer records we have subpoenaed that relate or may relate to your client's claim of a hard drive "crash" were "irrelevant" for discovery purposes. It is apparent we have fundamental differences on what is or may be relevant evidence in this case, and we are not comfortable with trusting you to unilaterally make that determination.

I would note you have produced hundreds (if not thousands) of irrelevant documents in earlier productions. We, also, have produced hundreds if not thousands of pages of documents we believed were irrelevant – but we recognized your right to review and make that determination. I'm sure only a small number of the thousands of pages of documents you have obtained from Floragon will, ultimately, be deemed relevant by any party to this action. The point is, whether a document is or is not potentially relevant is not a decision to be unilaterally made by opposing counsel when the document is clearly only that (sic) has been requested in discovery. Disk #2 has clearly been requested during discovery.

The fact that complex commercial cases typically involve thousand[s] of pages of document production, only a small portion of which are introduced as evidence at trial, demonstrates that most of the documents produced are determined, ultimately, to be irrelevant for trial purposes. That determination is typically not made, as contemplated by the Court's scheduling orders, until the very end of the case as to which documents are relevant for purposes of trial.

The Plaintiff does not claim these 1,318 deleted documents are duplicates of previously produced documents; nor that they are privileged. Plaintiff now claims these documents, by Plaintiff's unilateral determination, have no relevance or potential relevance, and contain no information reasonably calculated to

---

(Doc. 390, Exhibit E) The September 10, 2007 letter from plaintiff's counsel referenced in the foregoing letter reads, in relevant part, as follows:

I object to the production of such irrelevant documents. The law is clear. No party is required to produce irrelevant documents. Contrary to Ed's position, the cases he cites do not stand for the proposition that the requesting party is allowed to look at all documents of the defendant (relevant, irrelevant, personal and confidential) in order for the requesting party to decide which may be helpful.

Nevertheless, in an effort to resolve this dispute informally without the intervention of the Court, I propose three alternatives:

1.    Irrelevancy Log:  In satisfaction of your request, I propose an agreement whereby I prepare a log of the irrelevant documents that briefly describes each document on the index. In that the law does not require a party to prepare an "Irrelevancy Log", the Merrills will agree to pay our fees for its preparation. Alternately, I would be willing to produce a log of only the documents you select from the index, but again, at your expense.

2.    Submittal to the Court:  As a second alternative, I propose an agreement whereby I submit the irrelevant documents to the Court for the Court to determine which are relevant and which are not relevant. There will be no agreement regarding the apportionment of costs.

3.    Submittal to a Neutral:  As a third alternative . . .  I will submit the irrelevant documents to a Court-appointed Neutral. The Neutral will follow the procedure like the one that I outlined in my prior Motion for Appointment of a Neutral, including the apportionment of costs between the parties.

(Doc. 408, Exhibit L)

lead to relevant evidence. As discussed in more detail below, that is not a decision for Plaintiff's counsel to make when "the document" (i.e., the CD-ROM as the electronic storage medium on which clearly relevant documents were stored) was responsive to the production request.

The Plaintiff deleted all 60 of the Quicken files from Disk #2 despite the fact these files contained "modification dates" ranging from February 2002, the month before the alleged stock sale, through September of 2005, the year this lawsuit was filed. Obviously, a document has to exist before it can be modified; therefore, the deleted files include records that existed as of 3/21/02, the date of the $60,000 entry on Exhibit 18 to Peacock's deposition. *These files were omitted despite Plaintiff's knowledge that the Merrill Defendants considered the electronic version of those check register records extremely relevant to this case.*

.        .        .

There can be no doubt that "Disk #2," as the electronic medium on which clearly relevant documents were stored, is responsive to a production request dated July 7, 2006. The Court has rejected the Plaintiff's arguments that the electronic storage medium need not be produced as "duplicative" of the "hard copy" of documents (Doc. 307) in view of clear evidence that information is contained on the disk that is not found on printouts from that disk. Such electronically stored data includes dates a document was created and/or last modified.

The issue before the Court can be summarized as follows:

Must counsel for the Defendants in a multi-million dollar claim by the Plaintiff rely on opposing counsel's unilateral determination that a "document" (i.e., the electronic medium on which clearly relevant documents were stored) has no relevance or potential relevance, and does

not contains (sic) facts or assertions that might lead to relevant evidence?

.      .      .

[T]here can be little doubt that "Quicken" files that include the critical March, 2002, time period are relevant, potentially relevant, or may reasonably lead to discovery of relevant evidence. March of 2002 is, of course, the time period in which the Plaintiff alleges paying $100,000 as consideration for stock she claims to own. The Plaintiff has produced a "hard copy" printout of a Quicken document . . . as alleged evidence of partial payment ($60,000) of this amount. This document shows an entry dated March 21, 2002, which Plaintiff has alleged demonstrates the source of funds used for a portion of the consideration she paid. Yet, the Plaintiff has failed to produce, as of the date of this Motion, the electronic version of that computer record. It is unknown whether the electronic copy of this document was on one of the 1,318 files the Plaintiff erased from Disk #2 as produced. . . . [T]he Merrill Defendants "may find a beneficial use" for the accounting records and other non-privileged files on Disk #2 "which escapes" Plaintiff's counsel.

.      .      .

The Merrill Defendants, in an attempt to accommodate any legitimate concerns the Plaintiff might have, agreed to use the same "pull back" of documents procedure the parties agreed would apply to non-party production. . . . The Plaintiff rejected that compromise offer, leaving the Merrill Defendants with two options:

      1.     Move to compel production of Disk #2, unedited, except for the Plaintiff deleting only those documents listed on its privilege log.

      2.     Accept the opinion of the Plaintiff's attorney that none of the approximately 1,308

> non-privileged files erased from the disk were relevant, potentially relevant, or contained facts, assertions or information that might lead to relevant information when it is apparent the documents withheld include accounting records from the critical time period in which Plaintiff says she paid $100,000 for stock.
>
> .     .     .
>
> The Plaintiff has refused to produce a Copy of Disk #2 (less privileged documents) even under the "pull back" agreement the parties had previously adopted regarding production of documents that may be private, confidential, and not relevant, potentially relevant or reasonably calculated to lead to relevant evidence.
>
> It should be noted the Plaintiff can hardly claim that production of a true and accurate copy of Disk #2 would be unduly burdensome. It would have been less burdensome on all concerned to have copied the disk in its entirely (sic) with the exception of the files for which the Plaintiff has claimed privilege.
>
> Unfortunately, intervention of the Court is required to assure the previous order of this Court has been complied with by the Plaintiff, and that all documents that are relevant, potentially relevant, or reasonably calculated to lead to discovery of relevant evidence, have been produced.

(*Id.* at 5-6, 11-12, 13, 14 & 15 (internal footnotes omitted; emphasis in original))

5.     In her reply, filed October 5, 2007, plaintiff contends not only that "[a]ll relevant and responsive documents from Disk #2 have been

12

produced[]" but also that all "non-responsive documents which have not been produced have been made available for inspection." (Doc. 397, at ¶ 8; *see also id.* at ¶ 9 ("[T]o cut off the cost of Plaintiff's right to oppose the production of non-responsive documents, Plaintiff has offered the Defendants access to the non-responsive documents under a proposal of confidentiality. [] The Defendants have ignored the offer."))

To be clear, Plaintiff has:

a.    Produced responsive and relevant documents in electronic form (including a number of duplicates) and in hard copy form (including a number of duplicates).

b.    Produced all inadvertently omitted Quicken and QuickBooks documents, many in both hard copy form as well as electronic files associated with the Quicken and QuickBooks.

c.    Offered the Defendants an opportunity to read all non-responsive documents, but this offer has been ignored by Defendants. The twelve (12) documents listed by the Defendants in their Motion to Compel are non-responsive. However, the twelve (12) documents are included in the non-responsive documents and Defendants have been invited to read them, subject to a reasonable confidentiality agreement.

(*Id.* at ¶ 13 (footnote omitted))[5]

_____

[5]    Plaintiff's counsel sent to counsel for the Merrill defendants several letters penned in late September of 2007, and one dated October 5, 2007, regarding Disk #2 which she

has attached to her reply. Plaintiff's counsel's letter of September 27, 2007 reads, in relevant part, as follows:

> I am enclosing two CDs of the Quicken files from the CD marked "Peacock 26851". The CDs were created by Bridge City Legal Services in Portland, Oregon.

> One CD contains eleven (11) Quicken files in their native format. . . .

> The second CD contains (2) Quicken files in their native format which Bridge City is not able to open.

> .       .       .

> For the most part, the Quicken files appear to be duplicates of each other. . . .

> Also, the Quicken files are duplicates of hard documents previously produced, at least for the relevant period of this lawsuit. . . .

> As background, prior to Ed Fleming's letter of September 7, 2007, we were not able to open or print the Quicken data on the CD marked Peacock-26851. As a result, unknowingly we were not dealing with the universe of documents when we produced the hard copies or the electronic copies.

> As a result of Ed Fleming's letter, we retraced our steps, and engaged the services of the forensic specialists at Bridge City Legal Services.

> Bridge City identified thirteen (13) Quicken files, eleven (11) of which Bridge City was able to open. Bridge City could not open two (2) Quicken files, which they assume are damaged.

> Using recently acquired software, we could only open three (3) of the Quicken files in our office.

> To accommodate our lack of familiarity with Quicken, and our inability to open and read most of the files, Bridge City "converted" the data from Quicken to an Excel format, using a conversion software proprietary to Bridge City. The conversion software cannot be purchased.

_____

The metadata of the Quicken files is not preserved when the Quicken files are converted to the Excel format. As I understand it, you are only interested in the Quicken files in their "native format." Accordingly, that Excel format is not useful to you, and I have not included a CD of the Excel format.

However, you may have difficulty opening and reading the Quicken files in their "native state." If so, I will be happy to share with you the data in an Excel format (so both of us will be using the data in the same format), based on a limited waiver of the protections of the attorney work product doctrine and a possible sharing of the cost of the creation of the Excel format.

(Doc. 397, Exhibit D) Plaintiff's letter of September 28, 2007, reads as follows:

The CD marked "Peacock 26851" has a number of documents which are very personal to Linda Peacock, or even personal to her family. Some of the e-mails relate to personal relationships with her immediate family, and other documents appear to be school papers of her children. The documents are irrelevant to this lawsuit, and are not subject to production.

Despite this, you continue to insist on access to both privileged documents and irrelevant documents, including a demand that you read the highly personal and irrelevant documents of Linda Peacock in order for you to decide for yourself if the documents are or are not relevant.

Your Motion to Compel the CD Peacock 2685[1] would require the production of privileged and irrelevant documents. Again, we stand by our position that discovery is limited to relevant documents and non-privileged documents. We further stand by our position there is no accommodation in the law allowing the requesting party to review all documents, including privileged and irrelevant documents.

In an attempt to reach an informal agreement, and to avoid the continuing expense of a dispute over the production of irrelevant documents, I am offering to allow you to read the documents which have been withheld as irrelevant. Our allowing this review would be contingent on your agreement that the review is not a waiver of our claim that these documents are irrelevant and need not be produced. The documents are marked "Peacock-irlvt-1" through "Peacock-irlvt-490". For any document that you agree is irrelevant or is ultimately deemed irrelevant by the Court, we must agree that you will maintain the confidentiality of the content of these documents.

15

      6.      The Merrill defendants' rebuttal to the plaintiff's reply, filed on

---

         This review will give you an opportunity to identify which documents you believe are irrelevant and which documents you believe are relevant. You will have an opportunity to agree or disagree with our claim of lack of relevancy. We ask that you identify by Bates number any document you believe is relevant. If we agree to waive the claim of lack of relevancy, the document will be included in production. If we disagree, the document will be submitted to the Court to determine relevancy.

         As a second alternative, I propose that all of the documents withheld as irrelevant be tendered to Judge Cassady for him to decide if they are relevant.

         Please give me a call if you agree to either proposal.

(Doc. 397, Exhibit A) Finally, on October 5, 2007, plaintiff's counsel penned the following letter to counsel for the Merrill defendants:

         With belts and suspenders in mind (and without full knowledge of either the data or the software) I am enclosing a CD of all Quicken data, including the "associated" files, from the CD marked "Peacock-26851."

         The CD's I have delivered to you on September 27, 2007 did not include the "associated" files of Quicken. Again, with an eye toward completeness, but without any understanding of the usefulness of "associated" files, I am enclosing all files related to Quicken, including the "associated" files.

         The files were retrieved from the CD Peacock-26851 by Bridge City, e-mailed to our firm, and copied onto a disk by our firm.

         If you have questions, I will do what I can to answer them.

(Doc. 397, Exhibit C)

October 23, 2007,[6] reads, in relevant part, as follows:

>    Up until her most recent filing, the Plaintiff argued that Disk 2 was not produced because it contained information that was "irrelevant". The Plaintiff now claims, for the first time, that the Quicken files were not produced because "our staff had not been able to open or print the Quicken or QuickBooks data on CD-ROM Peacock-26581. Plaintiff further claims that they have been able to retrieve some of this data, but only through "converting" it into a format that deletes [] the "metadata" information showing the dates of creation and modification of the documents. That is evidence the Plaintiff knows Defendants have been seeking.

>    Of course, whether the Quicken accounting information could be opened provides no excuse for Plaintiff's failure to disclose its existence. Plaintiff knew or should have known from a cursory investigation of the disk that the Quicken accounting information existed, yet it has taken three motions to compel for the Merrill Defendants to even learn of the existence of those files.

>    The Plaintiff's actions have, at a minimum, delayed the Defendants' right to discover this evidence.

.     .     .

>    What we do know is that neither the original of Disk 1, nor the original of Disk 2, have been made available for viewing by the Merrill Defendants. What we do know is that metadata is

---

[6] On October 19, 2007, plaintiff's counsel penned a letter to counsel for the Merrill defendants, therein noting that he was opposing the defendants' motion for additional time to file a reply, in part, because he had "produced or have agreed to make available all documents on Disk #2, with the exception of the privileged documents." (Doc. 408, Exhibit Q, at 2; *see also id*. ("For all practical purposes, I have done what you had asked in your motion. With that in mind, it seems to me that discovery efforts would be better served looking at the documents we have offered instead of filing additional briefs to the Court."))

effectively lost through making copies of the originals. What we do know is that the Plaintiff has made multiple copies, and has "converted" data to a format that effectively deletes creation and modification date evidence.

.        .        .

The Plaintiff has represented to the Court that she has "offered the Defendants access to the non-responsive documents" under a "proposal of confidentiality." In a letter dated October 19, 2007, the Plaintiff's counsel states he has "produced or agreed to make available all documents on Disk #2, with the exception of the privileged documents." These are fundamentally inaccurate and/or misleading characterizations of the Plaintiff's "offer." Several points need to be made on this issue:

1.      Prior to the Merrill Defendants filing the Motion to Compel production of the disk directory of Disk 2, no offer to produce hundreds of files omitted from the copy of the electronic media requested (Disk 2) had been made. In fact, the Plaintiff effectively concealed the existence of the Quicken files on Disk 2, having testified in her deposition that she was aware of only one disk (Disk 1) that contained Quicken files. The Merrill Defendants learned of these previously concealed Quicken files after and only after a directory of Disk 2, produced only upon an order from this Court, revealed their existence. It should be noted that a previous directory produced by Plaintiff's counsel showed only MS-Word files, and made no indication that it was only a partial directory.

2.      The actual proposal by the Plaintiff required the Merrill Defendants, who have already incurred thousand[s] of dollars in attorney's fees seeking production of two disks that should have been produced last year, to pay *the Plaintiff's attorney's fees* to develop a list of electronic documents deleted from the heavily redacted disks that the Plaintiff eventually produced. No provision was made for payment of the attorney's

18

fees incurred by the Merrill Defendants, an issue now pending before this Court.

The Plaintiff proposed alternatives that would have the omitted documents submitted to the Court for a "relevancy" review (although no timely objection was made to production of the disks), or submission to a "special master" at the expense of [the] Merrill Defendants for a "relevancy" review. As has been pointed out in previous briefings, it would not be possible for the Court or a special master to know whether a document contains information that may be relevant to a defense theory of defense counsel absent a complete disclosure of the mental impressions of counsel. Discovery "relevancy" is extremely broad . . . . None of the proposals addressed the pending motion for sanctions against the Plaintiff for her repeated discovery abuses.

3.     Last[,] but not least, this "offer" was not made until after the "meet and confer" attempts by the Merrill Defendants resulted in no offers by the Plaintiff on this issue, and was made after and only after the Merrill Defendants were required to incur additional fees and costs in preparing and filing their 15 page Motion to Compel. Once again, the Plaintiff's offer does not include reimbursement of those fees and costs

It is respectfully submitted that the time to settle a discovery dispute is before or during the "meet and confer" conference(s); not after a party is required to incur substantial fees and costs preparing and filing a detailed motion and memorandum to compel what should have been done without the necessity of a motion. Thus, even had the Plaintiff made the offer represented, and she did not, the Merrill Defendants would be entitled to recovery of fees and costs incurred to force the Plaintiff to do what it (sic) should have done last year[,] i.e., produce the requested, un[-]objected "documents[.]"

(Doc. 408, at 14-15 & 24-27 (internal citations omitted)) In their rebuttal, the

Merrill defendants seek to compel the production not only of Disk 2 but also Disk 1. (Doc. 408, at 28)

7.     The surreply of plaintiff, filed October 30, 2007, reads, in relevant part, as follows:

13.     Disk #2 was copied and processed by Bridge City Legal, Inc.

14.     First, the relevant Word documents on Disk #2 were produced in electronic form with perfectly preserved metadata, as well as hard copies.

15.     Second, Bridge City's forensic experts identified Quicken/QuickBooks files on Disk #2. As an initial step, Bridge City created "mirror image" copies of the Quicken/QuickBooks files, preserving all metadata. Unfortunately, those "mirror image" copies are not readable.

16.     To accommodate a privilege review and production, Bridge City processed the data. More specifically:

A.     First, some of the Quicken/QuickBooks files were password protected. As a result, a number of the "mirror image" copies of the Quicken/QuickBooks files were not readable without removal of the passwords. Accordingly, Bridge City removed the passwords to accommodate a privilege review and meaningful production. Copies of Quicken/QuickBooks files without passwords were produced to the Merrill Defendants.

B.     Second, some of the Quicken/QuickBooks files were corrupted. Bridge City's forensic experts were able to access these files to recover data. The processed Quicken/QuickBooks files were produced to the Merrills.

20

C.   In a third category, some of the files were corrupted. Bridge City was not able to retrieve the data. The corrupted Quicken/QuickBooks files were produced to the Merrill Defendants.

17.   In summary, Plaintiff has produced electronic versions of the Quicken/QuickBooks files which have been processed to remove passwords, and to allow the data to be read by the Defendants. Without the processing, the files could not have been read by the Merrill Defendants.

18.   Bridge City Legal reports that the removal of the passwords and other processing may have altered some metadata. The processing and alterations were unavoidable to make the data readable. However, there are <u>no</u> <u>alterations</u> <u>to</u> <u>the</u> <u>content</u> <u>data</u>.

19.   To accommodate verification by the Merrill Defendants of the preservation of the data, Plaintiff is today hand delivering the "mirror image" Quicken/QuickBooks files, as unprocessed in any way. These "mirror image" files are exact duplicates of the original source data (including all metadata), but generally are not readable.

(Doc. 411, at 4-5 (emphasis in original; internal citation omitted))

## **DISPOSITION OF THE MOTION TO COMPEL**

1.   Before addressing the Merrill defendants' motion to compel production of Disk #2 (Doc. 390), the undersigned finds it necessary to first address these defendants' request, set forth for the initial time in their rebuttal to plaintiff's reply, that this Court compel the plaintiff to produce an exact duplicate of Disk 1 (*See* Doc. 408, at 28). This request is **DENIED** inasmuch

as the motion to compel under consideration by this Court, as aforesaid, is directed solely to Disk 2 (Doc. 390 ("MERRILL DEFENDANTS' MOTION TO COMPEL AS TO DISK #2")), not Disk 1. As the undersigned read and understood the motion to compel (Doc. 390), reference to Disk 1 was made only to set the proper context for the Merrill defendants' request that the Court compel production of Disk 2. Without a motion directed to its production, the undersigned considers the production of the badly-damaged Disk 1 to be a dead issue. Certainly, this Court will not  give any credence or force to a moving party's request, made for the first time in a rebuttal to a reply to a motion to compel, to compel production of electronically stored information that was not encompassed within the motion to compel presently before this Court for a ruling. If the Merrill defendants desire to inspect this badly-damaged disk they must either file another motion to compel or coordinate with plaintiff's counsel an inspection of same when they are at the office of plaintiff's counsel inspecting Disk 2, as explained more fully *infra*.

  2. In moving to compel an exact duplicate of Disk 2, save for the ten or so documents identified by plaintiff as privileged, the Merrill defendants ignore the Court's instructions to plaintiff, following the hearing on June 7,

2007,[7] to produce all "relevant" non-privileged information from Disk 2 in a usable electronic form. The Merrill defendants now make the argument that it is not for plaintiff to decide what is relevant information; instead, the defendants contend that this is a task only they can perform. The obvious problem with this argument, of course, is that it is clearly implicit within the Court's instructions during and following the June 7, 2007 hearing that relevancy was to be determined by the producing party, that is, the plaintiff. Moreover, this stance runs contrary to legal authority which provides that "'the proponent of a motion to compel discovery [still] bears the initial burden of proving that the information sought is relevant.'" *West v. Miller*, 2006 WL 2349988, *2 (2006) (citations omitted), *aff'd,* 2007 WL 541943 (N.D. Ill. 2007); *see also Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 154, 159 (D. D.C. 1999) ("[T]he proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant."). To a fairly large extent, the Merrill defendants have not established that the information contained on Disk 2 is relevant to these proceedings;[8] rather, this

---

[7]    These instructions were not modified in any manner when the Court ordered plaintiff to produce the disk directory.

[8]    The exception, however, is with respect to the Quicken/QuickBooks documents. The Merrill defendants have established that these documents are relevant under the broad concept of discovery relevancy. *West, supra,* at *2. Following the filing of the instant motion to

Court must agree with plaintiff that hundreds of documents contained on the disk are irrelevant and confidential, related as they are to homework assignments completed by plaintiff's children, personal communications among family members, and the like.[9] Despite their apparent irrelevancy, plaintiff has agreed to allow the Merrill defendants access to Disk 2 for their inspection and review of these documents. Moreover, the undersigned would be remiss in not ordering plaintiff to produce the Quicken documents in their native electronic format in light of plaintiff's discovery of same after the Court initially ordered production of all relevant, non-privileged information on June 7, 2007.

      3.     In light of the foregoing, the Court **GRANTS** the Merrill defendants' motion to compel as set forth hereinafter. Consistent with the provisions of Rule 34 of the Federal Rules of Civil Procedure, plaintiff is to make available to counsel for the Merrill defendants--as well as any technology consultants/experts retained by the Merrill defendants--for their

---

compel, the Merrill defendants were provided with copies of these Quicken documents in electronic form, albeit apparently not in the form which they seek in their motion. It appears to the Court that most, if not all, of these documents were actually provided to the Merrill defendants in "hard" form prior to their production electronically.

    [9]     In addition, it is clear to the undersigned that a number of "documents" on the directory of Disk 2 are, in actuality, not documents at all.

review and inspection, at the office of plaintiff's counsel, an exact copy of Disk 2, except for those ten documents previously identified as privileged on or before **January 25, 2008**. *See* Fed.R.Civ.P. 34(b)(i)-(iii) ("Unless the parties otherwise agree, or the court otherwise orders: (i) a party who produces documents for inspection shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request; (ii) if a request does not specify the form or forms for producing electronically stored information, a responding party must produce the information in a form or forms in which it is ordinarily maintained or in a form or forms that are reasonably usable; and (iii) a party need not produce the same electronically stored information in more than one form."). All electronic information shall be submitted for inspection in its native electronic format so that defense counsel and their computer expert(s) can access all metadata.[10] All documents deemed by counsel for the Merrill defendants to be relevant to these proceedings should be "tagged";[11] those documents not tagged by

_____

[10]    The Court understands that it may be impossible for counsel for the Merrill defendants, and these defendants' computer expert(s), to access the metadata associated with some of the Quicken files/documents.

[11]    The Merrill defendants are cautioned to be circumspect when tagging documents on Disk 2. It cannot be gainsaid that homework completed by plaintiff's children, poems written by plaintiff's children, and other personal documents generated by plaintiff and/or her children are entirely **IRRELEVANT** to this litigation; therefore, those documents are not to be "tagged" and copied or downloaded by the Merrill defendants.

counsel are not to be copied or downloaded by the Merrill defendants' computer expert(s) or counsel for these defendants. The "tagged" documents can be copied and downloaded by defendants' counsel and computer expert(s) to another disk which may be taken by counsel and/or the computer expert(s) to defense counsel's office. [12]

4.      Given the circumscribed manner in which the undersigned has ordered production of (perhaps irrelevant) information contained on Disk 2, the Court declines to award the moving parties attorneys' fees.

## <u>CONCLUSION</u>

The Merrill defendants' motion to compel as to Disk #2 (Doc. 390) is **GRANTED** in the limited manner set forth hereinabove. The request for an award of attorneys' fees is **DENIED**.

**DONE** and **ORDERED** this the 17th day of January, 2008.

  s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[12]      The Court does not expect plaintiff's counsel to necessarily agree with counsel for the Merrill defendants that all "tagged" documents are relevant. Nonetheless, for purposes of laying this issue to rest, plaintiff is ordered to allow the copying and downloading of all documents in electronic form whether relevant or not. The undersigned reiterates that counsel for the Merrill defendants should not "tag" for copying and downloading any of those documents previously identified as clearly irrelevant. *See, supra,* Footnote 11.

26