**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

LINDA PEACOCK,              :

   Plaintiff,              :

vs.                         :     CA 05-0377-BH-C

BURNEY H. MERRILL, et al.,  :

   Defendants.

**ORDER**

This cause is before the Court on the Merrill defendants' motion to take the second deposition of plaintiff (Doc. 422), the opposition of Linda Peacock (Doc. 434), the reply of the Merrill defendants (Doc. 436), and plaintiff's motion to strike the Merrill defendants' reply (Doc. 437).[1] Having considered the contents of these pleadings, this order is entered pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.2(a).

**FINDINGS OF FACT**

1.    Plaintiff originally instituted this action on June 24, 2005. (Doc. 1) In the initial complaint, plaintiff asserted claims for conversion, interference

---

[1] It was not necessary for the undersigned to substantively consider the contents of the Merrill defendants' reply in ruling upon the instant motion; therefore, the plaintiff's motion to strike the reply (Doc. 437) is **MOOT**.

with business relationships, breach of fiduciary duties, conspiracy, and sought a declaratory judgment. (*See id.*, at 9-14) Some of the significant factual underpinnings of the claims were stated as follows:

> 13.   In to-wit: May, 2003, Burney Merrill, acting individually and as the agent and representative of Willis Merrill and J. Collier Merrill; and the Schills, acting as the agents, representatives and attorneys for the Merrills, went to Peacock's home in Baldwin County, Alabama for the purpose of purchasing Peacock's interests in the Floragon Companies.
>
> 14.   While at Peacock's home, Burney Merrill, the Schills and Uter demanded that Peacock execute a document drafted by the Schills which provided for Peacock's conveyance, transfer and assignment of her interests in the Floragon Companies to the Merrills. (A copy of this document is attached hereto as Exhibit A).[2] Peacock refused to execute the document.
>
> . . .
>
> 38.   On to-wit: March 20, 2002, Uter and Peacock executed a written contract [] (copy attached as Exhibit B), whereby Uter, for $100,000, agreed to sell and convey to Peacock a portion of his shares and interests in the Floragon Companies; said portion constituting fifteen [] percent [15%] interest in the Floragon Companies . . . .
>
> 39.   Peacock paid Uter the full consideration of $100,000; specifically, by paying Uter $60,000 by cashier's check (copy attached as Exhibit C) and, by agreement, crediting Uter with the first four payments of $10,000 which Uter owed Peacock pursuant to the terms of the November 20, 2001 Divorce Settlement Agreement (copy attached as Exhibit D)

---

[2]   This description of the attached document is accurate. (*Compare* Doc. 1, ¶ 14 *with* Doc. 1, Exhibit A, ABSOLUTE TRANSFER OF INTERESTS)

> entered in Uter and Peacock's prior domestic case and on which Uter had defaulted during the period of December 2001-March 2002.

(Doc. 1, at 3 & 6-7)

2. In the first amended complaint, filed August 3, 2006, plaintiff added defendants, expanded her conspiracy claim, and added a claim for money had and received. (*See* Doc. 77) She made no changes in the foregoing cited facts. (*Compare id.*, at ¶¶ 13-14 & 38-39 *with* Doc. 1, at ¶¶ 13-14 & 38-39)

3. Plaintiff was deposed in this case on April 5, 2007. (*Compare* Doc. 180 ("The deponents may reserve their notices so long as the time for Linda Peacock's deposition is limited to one day, April 4, 2007, and is not to exceed nine hours in duration. The parties seeking her deposition are to agree on the apportionment of 8.5 hours of the deposition. Plaintiff's counsel is reserved .5 hour for his examination.") *with* Doc. 422, Exhibit A (indicating the video deposition of Peacock was taken on April 5, 2007)) During that deposition, the following exchanges occurred:

> Q. Is there any record that we can look at, and by "we," I'm talking about the lawyers in this room, the parties in this [] case, the Court, any records that we can look at to determine what the balance was prior to you giving Mr. Uter a $40,000[] credit against the 511[?]

3

      A.      Probably Quicken and the bank statements.

.   .   .

      Q.      And you still have that computer?

      A.      From back here, from this time? No, I do not.

      Q.      Where is that computer today?

      A.      Gone.

      Q.      Did you backup and save all of the data files from that program before you got rid of the computer or did you destroy those data files?

      A.      No, I didn't destroy anything. If they were destroyed, they were destroyed because of the problem I had with the computer, but I believe we copied them. But I don't know where they're at right now, if they're good. I don't know.

      Q.      How many discs are we talking about, approximately?

      A.      I don't know that. One, maybe.

      Q.      And whether they still exist or not, you don't know?

      A.      I don't know.

.   .   .

      Q.      . . . Did you produce a disc to your lawyer with some Quicken or Quick Books data files on it?

     A.     Yes.

     Q.     . . . Do you understand that, for whatever reason, that those data files haven't been able to be retrieved unless there was something that happened yesterday that I haven't been informed of?

     A.     What happened yesterday?

     Q.     We had a computer person looking at it yesterday. But are you aware that the data files cannot be retrieved?

     A.     No, I'm not. I knew nothing about yesterday.

     Q.     Did you produce one disc or more than one disc?

     A.     No. I believe it was just one disc.

     Q.     Is that the only disc you're aware of with Quicken files on it that would –

     A.     Yes.

     Q.     And the hard drive no longer exists?

     A.     Besides the disc from Paul.

     Q.     So there's two discs, one –

     A.     No, the old thing that Paul used to have. I don't have those, so I don't know.

     Q.     And you don't know where those are today?

     A.     Un-uh. It's not mine. They were Paul's.

     Q.     And the hard drive on your computer that was used to generate these entries . . . whenever they were made on

Exhibit 18, that hard drive you've disposed of?

    A.    It's gone, yeah.

    Q.    Did you just throw that computer away?

    A.    I don't know, either that or I donated [it]. I don't know.

(Doc. 422, Exhibit A, at 114, 123 & 139-140)

    4.    Plaintiff asserted in a pleading filed in this Court on October 5, 2007, that on May 28, 2007, she "located a CD-ROM, which appeared to have electronic data retrieved from her inoperative computer. The CD-ROM was marked as Peacock-26851." (Doc. 422, Exhibit B, ¶ 60)[3] Obviously, plaintiff was not questioned about the contents of this disk during her April 5, 2007 deposition. Importantly, Disk 2 contains a document dated March 19, 2002, which the Merrill defendants claim "expressly replaces the document dated March 20, 2002, on which Plaintiff bases her current claim." (Doc. 422, at n.6) The Merrill defendants also claim: "The 'metadata' contained on this electronic record shows it was actually created on March 28, 2002. While the Merrill Defendants had the 'hard copy['] of the '$500,000' novation agreement, they did not have the benefit of the 'metadata' information at her

---

[3]     This disk is, of course, Disk 2, which was the subject of the undersigned's order of January 17, 2008. (Doc. 447)

6

deposition." (*Id.*)

5.     The undersigned must agree with the Merrill defendants that plaintiff's assertion that she located Disk 2 after her April 5, 2007 deposition is contradicted by sworn testimony she gave on October 28, 2005 in *Peacock v. Uter*, CA 04-00279-BH-C. (Doc. 422, ¶ 8) "In that deposition, Plaintiff expressly identified a 'CD' (not a 'floppy disk,') and used a photograph of a portion of the directory of that CD to show 'metadata' information supporting her testimony that a document dated March 19, 2002, was actually not created until March 28, 2002. Plaintiff's use of a portion of the directory of Disk 2 in that prior litigation demonstrates her possession and use of Disk 2 *after she filed the lawsuit now before this Court*, and well before her answers to interrogatories and deposition testimony identifying only Disk 1." (*Id.*)

6.     On May 30, 2007, plaintiff filed her second amended complaint. (Doc. 292) The second amended complaint added defendants and a claim for oppression of a minority shareholder. (*See id.*) Again, however, the relevant factual allegations previously set forth from the initial complaint remain virtually unchanged save for some minor, immaterial changes in all four paragraphs and Paragraph 13's identification of Collier Merrill, rather than Burney Merrill, as the defendant who came to her Baldwin County home in

May, 2003. (*Compare* Doc. 292, ¶ 13 *with* Doc. 1, ¶ 13)[4]

## CONCLUSIONS OF LAW

1.   Rule 30(a)(2)(B) of the Federal Rules of Civil Procedure "requires a party to seek leave of court before calling a person for a second deposition." *Provide Commerce, Inc. v. Preferred Commerce, Inc.*, 2008 WL 360588, *3 (S.D. Fla. 2008); Fed.R.Civ.P. 30(a)(2)(B) ("A party must obtain leave of court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2), if . . . the person to be examined already has been deposed in the case[.]").

> The rationale behind this provision is to allow for the completeness of a deposition because new materials referred to during a deposition may require further production of documents and the taking of additional testimony in a subsequent deposition.
>
> .   .   .
>
> Federal Rule of Civil Procedure 26(b)(2) sets out the

---

[4]   While the Merrill defendants contend that the allegations in paragraph 39 of the second amended complaint directly conflict with plaintiff's deposition testimony and that they need to question her regarding this change, the undersigned cannot agree. In fact, the undersigned finds no substantive differences between paragraph 39 of the second amended complaint and paragraph 39 of the original complaint (Doc. 1) or paragraph 39 of the first amended complaint (Doc. 77). In other words, the undersigned finds no substantive conflict in the allegations of the complaint and plaintiff's deposition testimony that would not have been apparent at the taking of plaintiff's deposition on April 5, 2007. Accordingly, the Merrill defendants should have questioned plaintiff about those alleged inconsistencies during her initial deposition.

> court's power to manage and limit discovery in situations where "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." The purpose of this rule is to "guard against redundant or disproportionate discovery." However, the court "must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case."

*Benson v. Giordano,* 2007 WL 2355783, *2 (D. S.D. 2007); *see Provide Commerce, Inc., supra*, at *3 ("Rule 26(b)(2) guides courts in deciding whether to grant a second deposition.").

    2.    Based upon the foregoing, it is clear that the availability of a second deposition of plaintiff, as is now being requested by the Merrill defendants (Doc. 422), is left to the sound discretion of this Court. *Benson, supra,* at *2 ("[T]he 'availability of a second deposition is left to the discretion of the trial court.'"); *see also Tramm v. Porter Memorial Hosp.*, 128 F.R.D. 666, 668 (N.D. Ind. 1989) ("Like most discovery disputes, the availability of a second deposition is left to the discretion of the trial court."). Moreover, "[t]he party opposing the deposition must demonstrate 'good cause' for a

protective order." *Id.* (citation omitted); *see also Benson,* at *2 ("'[A] strong showing is required before a party will be denied the right to take a deposition.'").

3. In this case, plaintiff contends that the Merrill defendants' motion is "duplicative and unduly burdensome[]" (Doc. 434, at ¶ 6), that plaintiff has already been deposed for more that seven hours to accommodate two sets of defendants (*id*. at ¶ 8), and that the information sought by the Merrill defendants can be obtained by the less burdensome tool of interrogatories (*id*. at ¶ 12; *see also id*. at ¶¶ 9-11).

4. While it might well be true that plaintiff has been deposed six times in various cases in which she has been involved in this Court, she has been deposed but one time in this case. Therefore, her "duplicative and unduly burdensome[]" argument lacks force. Certainly, such argument does not constitute the strong showing necessary, even when combined with all other reasons offered, for denying the Merrill defendants' motion.

5. The fact that plaintiff has been deposed for more than seven hours by two sets of defendants also cannot carry the day for Peacock since Rule 30(d)(2) of the Federal Rules of Civil Procedure provides that a deposition is limited to one day of seven hours "[u]nless otherwise authorized

by the court or stipulated by the parties[.]" The undersigned has already extended this procedural guideline in this case (*see* Doc. 180) and, as previously indicated, Rule 30(a)(2)(B) imbues the Court with the discretion to order a person to sit for a second deposition.

      6.    Finally, plaintiff's contention that any additional inquiry the Merrill defendants have can be easily made through the less burdensome tool of interrogatories ignores the deposing party's ability to ask reasonable follow-up questions during a deposition that might not be readily apparent when posing interrogatories. Moreover, such argument ignores the fact that the Merrill defendants did not have any knowledge of Disk 2, much less an exact copy of that disk, when they first deposed Peacock in this case on April 5, 2007. This crucial fact leads the undersigned to the conclusion that plaintiff is subject to further examination, via deposition, regarding her knowledge of the existence of Disk 2 and its contents.

      7.    In **GRANTING** the Merrill defendants' motion for leave to take plaintiff's deposition (Doc. 422), however, the undersigned recognizes that certain limitations must be placed upon the second deposition. *See, e.g., Benson, supra,* at *4 ("Plaintiff shall limit herself in scope to asking questions about the material produced by defendant in response to the motion to compel.

Furthermore, plaintiff shall bear the costs of traveling to Connecticut to conduct, in person, the deposition of defendant, or the deposition may be taken telephonically."); *Christy v. Pennsylvania Turnpike Comm'n*, 160 F.R.D. 51, 53 (E.D. Pa. 1995) ("Several courts faced with similar situations have granted a party the right to take a second deposition, but have limited that deposition to matters not addressed in the first deposition. . . . We find that . . . defendants may notice Christy for a second deposition, but that the deposition shall be limited to areas not covered in the first deposition."). The Court **ORDERS** the Merrill defendants to notice plaintiff's second deposition for Mobile. The deposition will be limited to three (4) hours in duration, with plaintiff's counsel being reserved 30 minutes for his examination, and shall be limited in scope to facts surrounding plaintiff's knowledge of the existence of Disk 2 and the contents of Disk 2 as they relate to the claims made in this case.[5]

## CONCLUSION

The Merrill defendants' motion for leave to take plaintiff's deposition

---

[5] The undersigned perceives no reason for the Merrill defendants to question plaintiff about what they allege are inconsistencies between Peacock's prior testimony and the factual allegations in paragraph 39 of the second amended complaint. The factual allegations contained in paragraph 39 of plaintiff's second amended complaint are not materially different from those contained in paragraph 39 of the initial complaint or paragraph 39 of the first amended complaint and, therefore, these defendants should have questioned plaintiff about the alleged inconsistencies during her first deposition.

(Doc. 422) is **GRANTED.** As aforesaid, plaintiff's second deposition is to be noticed for Mobile. The deposition will be limited to three (4) hours in duration, with plaintiff's counsel being reserved 30 minutes for his examination, and shall be limited in scope to facts surrounding plaintiff's knowledge of the existence of Disk 2 and the contents of Disk 2 as they relate to the claims made in this case.

    **DONE** and **ORDERED** this the 21st day of February, 2008.

        s/WILLIAM E. CASSADY
        **UNITED STATES MAGISTRATE JUDGE**