IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LINDA PEACOCK,                    :

     Plaintiff,                   :

vs.                               :          CA 05-0377-BH-C

BURNEY H. MERRILL, et al.,        :

     Defendants.                  :

## ORDER

This cause is before the Court on plaintiff's motion to compel discovery from the Floragon defendants, as supplemented (Docs. 221 & 227), the response of the Floragon defendants (Doc. 228), the joint report of the interested parties and joint motion for determination of privilege (Doc. 342), plaintiff's objections to the Floragon defendants' claims of privilege as to documents on the July, 2007 revised privilege logs (Doc. 350), the Floragon defendants' brief in opposition (Doc. 354), the Floragon defendants' brief regarding choice of law (Doc. 382), and the plaintiff's choice of law brief (Doc. 387). Having considered the contents of these pleadings, as well as the testimony and arguments at the hearing held in this matter on August 30, 2007, this order is entered pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule

72.2(a).

## **FINDINGS OF FACT**[1]

1.      Twelve documents the Floragon defendants and Delta Counsel, P.C. claim are privileged from disclosure are at issue in this case. These documents were provided to the undersigned at the August 30, 2007 hearing in a black three-ringed binder for *in camera* inspection. Six of the documents are listed on the Floragon defendants' privilege log and six are contained on the privilege log submitted by Delta Counsel, P.C.

2.      The privilege logs reflect that with respect to seven of the documents, that is, Documents 510, 622, 866, 964, 392A, 392E, and 392F, the Floragon defendants and Delta Counsel have asserted only the attorney-client privilege. Document 510 is described as a memorandum to Richard Urrutia from Rick Schaefer regarding stock ownership; Document 622 is described as a memorandum to Chris James from Louis Bubala regarding analysis of a stock purchase agreement and Coral Resources terms; Document 866 is described as an email to Jerry Lawson, Jr. and Rick Schaefer from Chris James

---

[1]      The undersigned has drawn the findings of fact from the oral testimony and bench notes taken during the hearing on August 30, 2007 and the Court's record.  This was necessary due to the failure of the Court's recording equipment to capture the testimony of the witnesses. Should any party find that any of the factual findings are erroneous and material to the decisions reached herein, they may petition for reconsideration and the opportunity to file clarification affidavits.  Any request of this nature must be filed within ten days of receipt of this Order.

regarding a stock ownership issue; Document 964 is described as Rick Schaefer's notes regarding his meeting with Chris James, Jerry Lawson, and Ben Beddingfield; Document 392A is described as the handwritten notes of Jerry Lawson regarding stock ownership and the Merrills; Document 392E is described as the handwritten notes of Jerry Lawson regarding the stock ownership of the Merrills, Uter and Peacock; and Document 392F is described as the handwritten notes of Jerry Lawson regarding his telephone conference with Charles Hoffman about the stock ownership of the Merrills and Uter.

3.     The privilege logs reflect that with respect to the remaining five documents (i.e., 542, 802, 392N, 401B, and 412), the Floragon defendants and Delta Counsel, P.C., have asserted both the work-product privilege and the attorney-client privilege. Document 542 is described as a facsimile transmission to Chris James from Rick Schaefer regarding the payment history with Goodrich & Pennington; Document 802 is described as an email to Rick Schaefer from Chris James regarding Peacock's claim to stock; Document 392N is described as a memorandum from Dylan Becker to Chris James regarding legal research on security interests; Document 401B is described as the handwritten notes of Jerry Lawson regarding his conference with Barbara Crove over stock ownership issues; and Document 412 is described as a

memorandum to Chris James from Louis Bubala regarding unpaid stock subscriptions.

4.     Jerry Lawson, Esquire and Rick Schaefer testified at the evidentiary hearing held on August 30, 2007. Lawson began performing legal work for the Floragon defendants in 1998  while a member of the Williams, Kastner, law firm in Portland, Oregon. In January of 2000, Lawson was hired as in-house counsel for the Floragon companies. He left Floragon on April 1, 2002 and entered private practice. Specifically, he formed Delta Counsel, P.C., and continued to perform work for the Floragon companies.

5.     Rick Schaefer, an Executive Vice President, shareholder, and director of the Floragon defendants, managed all contacts with the defendants' attorneys.[2] According to Schaefer, Richard Urrutia and Chris James of the Williams, Kastner  law firm in Portland have performed various duties for the Floragon defendants over the last ten or fifteen years.[3] In addition, Schaefer testified that he obtained personal advice from Chris James regarding shareholder issues.[4]

---

[2]     In other words, Schaefer retained attorneys to represent the Floragon companies.

[3]     Louis Bubala and Dylan Becker are also attorneys in the Williams, Kastner law firm.

[4]     Lawson testified that he did not represent individual shareholders relating to individual shareholder issues.

6.      Schaefer testified that during the years 2000 through 2003 the Floragon defendants were operating two sawmill companies in Oregon which were heavily in debt and that these defendants were in default on their loans with the lender, Goodrich & Pennington.[5] There was ongoing litigation against the Floragon companies and their guarantors (i.e., the shareholders).

7.      Shaefer testified that he created documents 510 and 542, as an officer of the companies, at the direction of Chris James and that those documents reflect debt issues. He testified that document 964 reflects his May 15, 2003 handwritten notes of a meeting he had with Chris James, Jerry Lawson, and Ben Beddingfield, another officer, director and shareholder of the Floragon companies.

8.      Schaefer and Lawson testified that there were no written retainer agreements between the Floragon companies and any attorneys or law firms. In addition, according to Schaefer, he had no written retainer agreement with James and his law firm with respect to James' personal representation of Schaefer.

9.      Jerry Lawson testified that his personal handwritten notes were never shared with his clients.

_____

[5]      Schaefer worked and resided in Oregon during this entire time frame.

10.     The Merrill defendants are not in possession of any of the documents the Floragon defendants claim are privileged.

## CONCLUSIONS OF LAW

**A.      Conflict of Laws as it Relates to the Work Product Doctrine and the Attorney-Client Privilege.**

1.      Since it is the position of the Floragon defendants that the law of the states of Alabama, Florida and Oregon are virtually identical with respect to the attorney-client privilege, this Court, as suggested by plaintiff, will look to Alabama law to set the proper framework for deciding the attorney-client privilege issues raised in this case. Federal Rule of Evidence 501 provides that Alabama law on the issue of attorney-client privilege governs in this diversity action. *See* Fed.R.Evid. 501 ("Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to the element of a claim or defense as to which State law supplies the rule of

decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."); *Developers Surety & Indemnity Co. v. Harding Village, Ltd.,* 2007 WL 2021939, *1 (S.D. Fla. 2007) ("In a diversity case, such as this, federal courts apply state law to resolve claims of attorney-client privilege and joint-defense privilege, but federal law to resolve claims of privilege under the work product doctrine."); *McClary v. Walsh*, 202 F.R.D. 286, 290 (N.D. Ala. 2000) ("Because the rule of decision in this diversity case is supplied by Alabama state law, the law of privileges also comes from state law."); *Shipes v. BIC Corp.*, 154 F.R.D. 301, 304 (M.D. Ga. 1994) ("Federal Rule of Evidence 501 governs the assertion of privileges and states that where state law applies to the substantive issues in the case, then privileges shall also be determined by state law."). However, "[b]ecause the work product doctrine is not considered a substantive privilege, Fed.R.Evid. 501 does not require that state law be applied." *Id*. at 305 n.2 (citation omitted); *see also Milinazzo v. State Farm Ins. Co.*, 2007 WL 4350865, *6 & *8 (S.D. Fla. 2007) ("While Rule 501, Fed.R.Evid.[,] provides that Florida law of *privilege* governs in a federal diversity suit, the work product doctrine is a limitation on discovery in federal cases and federal law provides the primary decisional framework. . . . 'Unlike

the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed.R.Civ.P. 26(b)(3) . . . .'"). Instead, federal law is applicable to the work product issues in this case. *See, e.g., Underwriters Ins. Co. v. Atlanta Gas Light Co.,* 2008 WL 489016, *3 (N.D. Ga. 2008) ("In this diversity action, the scope of the work product doctrine is determined by Rule 26(b)(3) of the Federal Rules of Civil Procedure."); *United States Fidelity & Guaranty Co. v. Liberty Surplus Ins. Corp.,* 2007 WL 3023488, *2 (M.D. Fla. 2007) ("The attorney work product doctrine is determined based on federal law."); *The Atrium on the Ocean II Condominium Ass'n, Inc. v. QBE Ins. Corp.,* 2007 WL 2972937, *2 (S.D. Fla. 2007) (applying federal law to issues relating to the work product doctrine).

## B.    <u>Work Product Doctrine.</u>

2.    "The attorney work-product privilege traces its roots to the recognition by the Supreme Court, in *Hickman v. Taylor*, 329 U.S. 495, 510-11, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947), that 'it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1421 (11th Cir.), *opinion modified on reh'g on other*

*grounds*, 30 F.3d 1347 (1994), *cert. denied sub nom. USX Corp. v. Cox*, 513
U.S. 1110, 115 S.Ct. 900, 130 L.Ed.2d 784 (1995); *see United Kingdom v.
United States*, 238 F.3d 1312, 1321 (11th Cir.) ("The work-product doctrine
reflects the strong 'public policy underlying the orderly prosecution and
defense of claims.'"), *cert. denied sub nom. Raji v. United States*, 534 U.S.
891, 122 S.Ct. 206, 151 L.Ed.2d 146 (2001). The work-product doctrine is set
forth in Rule 26(b)(3) of the Federal Rules of Civil Procedure.

> **(3)   Trial Preparation: Materials.**   Subject to the
> provisions of subdivision (b)(4) of this rule, a party may obtain
> discovery of documents and tangible things otherwise
> discoverable under subdivision (b)(1) of this rule and prepared
> in anticipation of litigation or for trial by or for another party or
> by or for that other party's representative (including the other
> party's attorney, consultant, surety, indemnitor, insurer, or
> agent) only upon a showing that the party seeking discovery has
> substantial need of the materials in the preparation of the party's
> case and that the party is unable without undue hardship to
> obtain the substantial equivalent of the materials by other
> means. In ordering discovery of such materials when the
> required showing has been made, the court shall protect against
> disclosure of the mental impressions, conclusions, opinions, or
> legal theories of an attorney or other representative of a party
> concerning the litigation.

*Id*.

3.     In order to overcome the work product privilege, the requesting

party "must show both a substantial need for the information and that seeking

the information through other means would cause undue hardship." *United*

*Kingdom, supra*, 238 F.3d at 1322 (citations omitted).

> Material that reflects an attorney's mental impressions, conclusions, opinions, or legal theories, is referred to as "opinion work product." "Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." In *Upjohn*, the Supreme Court made clear that an attorney's notes and memoranda of a witness's oral statements is considered to be opinion work product. As Rule 26(b)(3) makes apparent, "opinion work product can not be discovered upon a showing of substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." Instead, "opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances."

*Cox, supra*, 17 F.3d at 1422 (internal citations omitted).

4.     "A party must anticipate litigation *at the time* the documents were drafted for these protections to apply. Materials or documents drafted in the ordinary course of business are not protected." *Milinazzo, supra*, at *5 (internal citation omitted); *see also Cutrale Citrus Juices USA, Inc. v. Zurich American Ins. Group*, 2004 WL 5215191, *2 (M.D. Fla. 2004) ("The work product doctrine protects from disclosure materials prepared in anticipation of litigation by or for a party or that party's representative (including its attorney). . . . The work product doctrine was not intended to protect from general discovery materials prepared in the ordinary course of business[.]"). "Documents which were produced in anticipation of litigating one case remain

10

protected in a separate case, at least where the cases are closely related." *Shipes*, 154 F.R.D. at 305 (citations omitted); *see Universal City Development Partners, Ltd. v. Ride & Show Engineering, Inc*., 230 F.R.D. 688, 691 (M.D. Fla. 2005) ("Although the United States Court of Appeals for the Eleventh Circuit has not addressed the issue, the Court finds that the above language from *Grolier* provides a strong basis to conclude that Rule 26(b)(3) applies to subsequent litigation.").

5.      In *Underwriters Ins. Co., supra*, the United States District Court for the Northern District of Georgia determined that "the literal text of Rule 26(b)(3) and its interpretation by courts in this circuit suggest that the Rule provides an absolute bar to discovering the mental impressions of an attorney or representative." *Id*. at *6.

6.      "[T]he burden is on the party withholding discovery to show that the documents should be afforded work-product immunity." *Milinazzo, supra,* at *5 (citations omitted); *see also Cutrale Citrus Juices USA, Inc., supra,* at *2 ("The party resisting discovery bears the burden of demonstrating the applicability of the work product doctrine.").

7.      "Unlike the attorney-client privilege, 'the work-product privilege is not necessarily waived by disclosure to any third party'; rather, 'the courts

generally find a waiver of the work product privilege only if the disclosure substantially increases the opportunity for potential adversaries to obtain the information.'" *Resolution Trust Corp. v. Massachusetts Mut. Life Ins. Co.*, 200 F.R.D. 183, 188-189 (W.D. N.Y. 2001); *see also Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1428 (3rd Cir. 1991) ("Because the work-product doctrine serves instead to protect an attorney's work product from falling into the hands of an adversary, a disclosure to a third party does not necessarily waive the protection of the work-product doctrine. Most courts hold that to waive the protection of the work-product doctrine, the disclosure must enable an adversary to gain access to the information."); *Burlington Industries, Inc. v. Rossville Yarn, Inc*., 1997 WL 404319, *2 (N.D. Ga. 1997) ("[T]he work-product doctrine does not require that a document be kept strictly confidential in order to fall within its protection. 'Disclosure of a document to third persons does not waive the work-product immunity unless it has substantially increased the opportunities for potential adversaries to obtain the information.'").

8.      Having reviewed all twelve documents *in camera*, the undersigned is satisfied that the Floragon defendants and Delta Counsel have established that Documents 542, 802, 392N, 401B, and 412 should be afforded

work-product immunity. Document 542 was prepared by Rick Schaefer at Chris James' request in anticipation of possible litigation with Goodrich & Pennington regarding the two Oregon Floragon companies' default on loans made by Goodrich & Pennington. The undersigned is of the opinion that the instant case is closely enough related to the Goodrich & Pennington case to provide work-product protection to this document.  *Shipes, supra*, 154 F.R.D. at 305; *see Universal City Development Partners, Ltd., supra*, 230 F.R.D. at 691. The remaining documents (802, 392N, 401B, and 412) are saturated with the mental impressions of counsel and, therefore, need not be produced to the plaintiff.[6]  *Cox, supra,* 17 F.3d at 1422 ("Material that reflects an attorney's mental impressions, conclusions, opinions, or legal theories, is referred to as 'opinion work product.' . . . '[O]pinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.'"); *Lake Shore Radiator, Inc. v. Radiator Express Warehouse,* 2007 WL 842989, *4 (M.D. Fla. 2007) ("Opinion work product is absolutely immune from discovery."); *Underwriters Ins. Co., supra*, at *6 ("[T]he literal

---

[6]     The undersigned would note a caveat with respect to Document 401B. While Jerry Lawson's  handwritten notes of a conversation he had with Barbara Crove do contain some mental impressions it also appears that same also contain some facts that can be provided to plaintiff in redacted form. Delta Counsel, P.C., is **ORDERED** to again review Document 401B and provide a redacted copy of same to plaintiff on or before **April 11, 2008**.

text of Rule 26(b)(3) and its interpretation by courts in this circuit suggest that the Rule provides an absolute bar to discovering the mental impressions of an attorney or representative.").

9.      It is plaintiff's contention that because Chris James and Richard Urrutia were attorneys for the Floragon companies' individual shareholders and Jerry Lawson was counsel for the Floragon companies, the sharing of information by the individual shareholders with the Floragon companies waived any claim of privilege with respect to those documents. In other words, it is plaintiff's argument that the disclosure of a confidential communication between an attorney and client to a third party, like the Floragon companies, waives the privilege. The undersigned need disagree with plaintiff given that it has been supplied with no evidence that the position of the pertinent individual shareholders (i.e., Rick Schaefer, Ben Beddingfield, and Howard Page) is adversarial with the position of the Floragon companies. *See Resolution Trust Corp.*, *supra*, 200 F.R.D. at 188-189 (acknowledging that courts find waiver of work-product privilege only if the disclosure to a third party substantially increases the opportunity for potential adversaries to obtain the information). Certainly, those positions are not adversarial in this case inasmuch as Schaefer, Beddingfield and Page have been dismissed as

defendants (Doc. 349). Accordingly, the undersigned declines to find waiver of the work-product privilege with respect to these documents and will not order their production, save as indicated with respect to Document 401B.

### C. **Attorney Client Privilege.**

10.     The general rule of attorney-client privilege under Alabama law is set forth in Rule 502(b) of the Alabama Rules of Evidence:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication[7] made for the purpose of facilitating the rendition of professional legal services to the client, (1) between the client[8] or a representative of the client and the client's attorney or a representative of the attorney, or (2) between the attorney and a representative of the attorney, (3) by the client or a representative of the client or the client's attorney or a representative of the attorney to an attorney or a representative of an attorney representing another party concerning a matter of common interest, (4) between representatives of the client and between the client and a representative of the client resulting from the specific request of, or at the express direction of, an

---

[7]     "A communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those to whom disclosure is reasonably necessary for the transmission of the communication." Ala.R.Evid. 502(a)(5).

[8]     "Rule 502(a)(1) defines a 'client' who may claim the privilege as 'a person, public officer, corporation, association, or other organization or entity, either public or private, that is rendered professional legal services by an attorney, or that consults an attorney with a view to obtaining [professional] legal services from the attorney.'" *Ex parte City of Leeds*, 677 So.2d 1171, 1173 (Ala. 1996).

attorney,[9] or (5) among attorneys and their representatives representing the same client.

Ala.R.Evid. 502(b) (footnotes added). "The purpose of the privilege is to encourage candid 'communication between attorneys and their clients and thereby promote broader public interest in the observance of law and administration of justice.'" *Ex parte Great American Surplus Lines Ins. Co.*, 540 So.2d 1357, 1358 (Ala. 1989) (citations omitted); *see also Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976) ("Confidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged. . . . The purpose of the privilege is to encourage clients to make full disclosure to their attorneys."). "The general rule is that an attorney cannot disclose advice he gave to his client about matters concerning which he was consulted professionally, nor can the client be required to divulge the advice that his attorney gave him." *Ex parte Great American*

---

[9]     The Advisory Committee Notes contain the following significant comments about subsection (b)(4) of Rule 502: "Because an overbroad application of subsection (b)(4) could lead to abuse in a corporate or business setting, the committee feels it necessary to restate the following safeguards: the burden is upon the party asserting the privilege to prove it; the privilege is to be strictly applied, because it is in derogation of the search for the truth; the judge has the responsibility for determining if the privilege applies and should not normally decide the question based solely upon the fact that the client asserts it; the communication may be made only between representatives of the client who are within the 'control group' or whose duties are closely related to the matter about which the communication is made; the claimant must prove that the communication was treated within the corporation as confidential; and the person claiming the privilege must show that the communication was made 'for the purpose of effecting legal representation for the client.'"

*Surplus Lines Ins. Co.,* 540 So.2d at 1358 (citation omitted); *see also Ex parte State Farm Fire & Cas. Co.*, 794 So.2d 368, 374 (Ala. 2001) ("'It is well established that "communications made by a client to his attorney for the purpose of seeking professional advice, as well as the responses by the attorney to such inquiries, are privileged communications not subject to disclosure."'"); *see* Ala.Code § 12-21-161 ("No attorney or his clerk shall be competent or compelled to testify in any court in this state for or against the client as to any matter or thing, knowledge of which may have been acquired from the client, or as to advice or counsel to the client given by virtue of the relation as attorney or given by reason of anticipated employment as attorney unless called to testify by the client, but shall be competent to testify, for or against the client, as to any matter or thing the knowledge of which may have been acquired in any other manner.").

> To be privileged against disclosure, therefore, a communication between a lawyer and a person must meet several criteria; not every communication between a lawyer and another person is privileged. First, there must exist an attorney/client relationship, that is, there must be an understanding between the parties to the communication that the lawyer has assumed certain legal responsibilities to advise and guide the client on legal matters. Second, there must be a communication. The mere delivery of documents to an attorney by a client, for example, does not shield the documents behind the attorney/client privilege. The act of delivering the documents is not communicative. Third, the communication must be intended to be confidential;

> communications that are themselves intended to be further communicated to others outside the privilege or which must be publicly disclosed as part of the attorney's duty to the client are not privileged. The burden of proving that a particular communication comes within the privilege rests on the party asserting the privilege, not on he who is seeking the information. Whether the party who asserts the attorney-client privilege is the attorney or the client, the party must establish (1) the presence of an attorney-client relationship, (2) the facts which demonstrate the communications were within the privilege, and (3) the prejudicial effect to the client which would result from any disclosure of the privileged information.

*McClary, supra,* 202 F.R.D. at 290-291 (internal citations and quotation marks omitted).

11.     This privilege is subject to waiver if there is voluntary disclosure of the allegedly privileged matter. Ala.R.Evid. 510 ("A person upon whom these rules confer a privilege against disclosure waives the privilege if the person or the person's predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter.").[10] Waiver can be either direct or constructive. *Ex parte Great American Surplus Lines Ins. Co., supra*, 540 So.2d at 1359.

12.     While the attorney-client privilege "belongs solely to the client, not the attorney[,]" *Ex parte State Farm Fire & Cas. Co., supra*, 794 So.2d at

---

[10]     The Advisory Committee Notes to Rule 510 recognize that waiver may occur "when the holder allows an unnecessary third party to be privy to an otherwise privileged communication[]" or "when the holder tells a third party about the privileged matter."

377, obviously the attorney can claim the privilege on behalf of the client, Ala.R.Evid. 502(c).

13.     The attorney-client privilege "applies only to communications between client and counsel[]" whereas "[t]he work-product doctrine is broader in that it affords protection to all documents and tangible items prepared by or for the attorney of the party from whom discovery is sought 'as long as they were prepared in anticipation of litigation or preparation for trial.'" *Ex parte Great American Surplus Lines Ins. Co., supra*, 540 So.2d at 1360 (citations omitted).

14.     Alabama recognizes that "'"where two or more persons interested in the same subject matter are present at a conference with an attorney who represents only one of those present, it has been held that matters discussed at such conference are confidential as to strangers to the conference and accordingly they constitute privileged communications as to such strangers."'" *Lynch v. Hamrick*, 968 So.2d 11, 15 (Ala. 2007) (citations omitted); *see also Crenshaw v. Crenshaw*, 646 So.2d 661, 662 (Ala. 1994) ("'The rationale behind [the rule that statements between an attorney and client in the presence of a third party constitute a waiver of the privilege] is that since a third person is not involved in the relationship between the attorney and his

client, the presence of such third party defeats the confidential nature of the conference and thereby the privilege. . . . Neither that rationale nor the rule which it supports applies when the third person is also a client as to the subject matter discussed in the conference *or has a common interest in the matters discussed*. . . . "Where two or more persons employ an attorney as their common attorney their communications to him in the presence of each other are regarded as confidential so far as strangers to the conference are concerned, and are privileged as to them. Likewise, where two or more persons interested in the same subject matter are present at a conference with an attorney who represents only one of those present, it has been held that matters discussed at such conference are confidential as to strangers to the conference and accordingly they constitute privileged communications as to such strangers . . . .""").

15.    With these principles in mind, the undersigned first considers Documents 622, 392A, 392E, and 392F. The Floragon defendants and Delta Counsel, P.C. have asserted that these four documents are protected from disclosure by the attorney-client privilege. The undersigned finds, however, that the Floragon defendants and Delta Counsel have not satisfied their burden of establishing that these documents fall within the protective confines of the

attorney-client privilege. Notably, none of these documents constitute a communication between counsel and client. Lawson testified at the evidentiary hearing that he never shared his handwritten notes with his clients (i.e., the Floragon companies) and, therefore, those notes do not constitute protected communications with his clients. *See Ex parte Great American Surplus Lines Ins. Co., supra*, 540 So.2d at 1360. Moreover, the internal legal memorandum from Louis Bubala, Esquire, to his law partner, Chris James, Esquire, is not a communication between counsel and client; therefore, it cannot be shielded from disclosure by the attorney-client privilege.[11] Because the attorney-client privilege does not shield Documents 622, 392A, 392E, and 392F from disclosure, and neither the Floragon defendants nor Delta Counsel have asserted another privilege which attaches to these documents,[12] the

---

[11]     Certainly, it is clear that the Floragon defendants have fallen into possession of Document 622. However, as indicated above, the mere delivery of documents by an attorney to a client does not shield that document behind the attorney-client privilege. *See McClary, supra*.

[12]     *MCI Construction, LLC v. Hazen & Sawyer, P.C.*, 213 F.R.D. 268, 272-273 (M.D. N.C. 2003) ("[F]or several of the documents, [the City] asserted only attorney-client privilege, with no mention of work product protection. In its response brief, the City does refer to all challenged documents as being work product. However, simply making a statement in a brief without any support is both late and insufficient. Claims for protection against discovery must be timely made. The City's assertions of privilege are controlled by its privilege log. Therefore, with the loss of attorney-client privilege protection because of the Public Records Act, the City is left without any claims of privilege as to certain of the documents listed in its privilege log. It should immediately produce those documents to plaintiff."); *see Carty v. Government of the Virgin Islands*, 203 F.R.D. 229, 230 (Dist. V.I. 2001) (privilege log found inadequate due to asserting party's failure to provide dates, subject matter of the communications

undersigned **ORDERS** the Floragon defendants and/or Delta Counsel to produce un-redacted copies of these documents to plaintiff not later than **April 11, 2008**.

16.     This leaves for the undersigned's consideration three documents, that is, Documents 510, 866, and 964. As reflected by Floragon's Privilege Log, a redacted copy of Document 866 has been produced to plaintiff. Clearly, all three of these documents constitute either a communication from client to attorney or communications between counsel and client. Plaintiff contends, however, that the attorney-client privilege has been waived as to all three documents since the communications were disclosed to Floragon, a third party. The undersigned finds that the Floragon companies have a common interest in matters discussed between certain Floragon shareholders and their attorneys such that the attorney-client privilege has not been waived by the disclosure of such information to the Floragon companies. The specific common interest existing here between the Floragon companies and its shareholders was the potential (and then eventual) litigation with the lender, Goodrich &

or a description of the particular privilege claimed regarding the particular documents or conversations); *cf. Third Party Verification, Inc. v. SignatureLink, Inc.*, 2007 WL 1288361, *3 (M.D. Fla. 2007) ("'A party who fails to file timely objections waives all objections, including those based on privilege or work product.'").

Pennington. Therefore, the sharing of information between counsel for the individual shareholders and the Floragon companies did not waive the attorney-client privilege with respect to these three documents and these documents need not be supplied to plaintiff.[13]

## CONCLUSION

In light of the foregoing, plaintiff's motion to compel discovery from the Floragon defendants, as supplemented (Docs. 221 & 227), is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent that these defendants and/or Delta Counsel, P.C., must produce to plaintiff, on or before **April 11, 2008**, un-redacted copies of Documents 622, 392A, 392E, and 392F and redacted copies of Documents 401B and 964. The motion to compel is otherwise **DENIED**.

**DONE** and **ORDERED** this the 18th day of March, 2008.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[13]    Plaintiff additionally contends that to the extent Document 964 contains factual information such facts cannot be protected merely because they have been shared with counsel. The undersigned **AGREES** with this argument and **ORDERS** the Floragon defendants to produce a redacted copy of Document 964 to plaintiff on or before **April 11, 2008**. It has been an impossible task for the undersigned to decipher Schaefer's notes; however, to the extent same contain rote factual information such information is to be provided to plaintiff.