# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| LINDA C. PEACOCK, | ) |
|     Plaintiff, | ) |
| v. | )    CIVIL ACTION NO. 05-00377-KD-C |
| BURNEY H. MERRILL, et al., | ) |
|     Defendants. | ) |

## ORDER

This matter is before the Court on the Plaintiff's motion for new trial filed pursuant to Rule 59 of the Federal Rules of Civil Procedure (doc. 709). After considering the motion and Defendants' response thereto (doc. 712) in light of the evidence and arguments presented at trial, the Court finds that Plaintiff is not entitled to relief.

## Background

This case proceeded to jury trial in March 2010 after a lengthy pretrial period. The central dispute at trial was whether the Plaintiff, Linda Peacock, or the Defendants, Burney H. Merrill, J. Collier Merrill and Willis C. Merrill ("the Merrills") were the lawful owners of a 15% interest in a group of closely-held companies collectively known as "Floragon." Peacock sought a declaratory judgment on that issue and also asserted various legal causes of action against the Merrills for interference with her alleged ownership rights. At trial, Peacock sought to prove that that she purchased the 15% ownership interest in Floragon from her former husband, Marion Uter, in 2002. In defense against Peacock's claim, the Merrills presented evidence that the disputed 15% interest was not Uter's to sell because Uter never actually fulfilled his contract to

purchase that interest from them. Ultimately, the jury was asked to decide (by way of special interrogatories) whether Peacock had proved these essential facts: (1) that Uter owned a 15% interest in the Floragon companies at the time he allegedly transferred them to Peacock and (2) if so, whether Peacock actually acquired Uter's interest. Because the jury answered the first question in the negative, it did not reach the second. The Court concurred with the jury's verdict and entered a judgment in favor of the Merrills on all claims, including the declaratory judgment. Peacock filed a timely motion for new trial pursuant to Fed. R. Civ. P. 59.

**Standard of Review**

A motion for new trial should be granted under Rule 59(e) if "the verdict is against the clear weight of the evidence or will result in a miscarriage of justice." *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183 (11th Cir. 2001). "The only grounds for granting a motion for new trial are newly-discovered evidence or manifest errors of law or fact." *In re Kelloggi,* 197 F.3d 1116, 1119 (11th Cir. 1999) (applying bankruptcy rule identical to Fed. R. Civ. P 59(e)). A judge may not substitute her judgment for that of the jury; therefore, "'new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great-not merely the greater-weight of the evidence.'" *Id.* (quoting *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984)). Furthermore, a motion for new trial is not a forum to relitigate old matters or to present arguments or evidence that could have been presented at trial. *Michael Linet, Inc v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir.

2

2005). With these principles in mind, the Court turns to the grounds raised by the Peacock in support of her motion for new trial.[1]

**Issues Raised**

Peacock raises questions of evidentiary sufficiency and legal error in support of her motion for a new trial. She argues that the verdict was against the great weight of the evidence because any of the following evidence, standing alone, conclusively establishes Uter's 15% ownership interest: (1) a merger clause contained one of several written contracts known as the pooling agreements; (2) the Merrills' verified tax declarations (because they contradicted the Merrills' trial testimony); and (3) various evidence that showed Uter had legal or equitable title, or both, to 15% of Floragon stock. Peacock also argues that the following legal rulings were erroneous and entitle her to a new trial: (1) the Court's denial of her *Batson* challenge at jury selection and (2) the Court's refusal to admit evidence under the business records exception to the hearsay rule. Each of these issues is addressed below.

**Legal Analysis**

### The Merger Clause & the Pooling Agreements

At trial, the parties introduced into evidence a series of written documents, collectively known as "the pooling agreements." One of those contained the following merger clause:

> This Agreement, and the Stock Purchase Agreement referenced herein, constitutes the sole and entire agreement and understanding between the

---

[1] Peacock did not obtain a trial transcript to support her motion for new trial, a tactic that seems to have facilitated some rather tenuous claims. Having no need to cite to the record, Peacock relies on a recitation of the evidence quite favorable to her and on objections she failed to raise at trial. To support their opposition to Peacock's *Batson* claim, the Merrills have submitted a transcript of jury selection. The Court must rely on its trial notes and memory to address the remainder of the issues presented.

> parties hereto as to the subject matter hereof and supersedes all prior discussion, agreements and understandings of every kind and nature between them as to such subject matter.

(Doc. 709-1¶ 15.) Peacock argues that this merger clause, in conjunction with other evidence, entitles her to a new trial.

"[A] merger clause is a highly persuasive statement that the parties intended the agreement to be totally integrated and generally works to prevent a party from introducing parol evidence to vary or contradict the written terms." *Jenkins v. Eckerd Corp.*, 913 So. 2d 43, 52 (Fla. Dist. App. 2005). However, the parol evidence Peacock now seeks to exclude--evidence regarding a 1999 oral agreement between the Merrills and Marion Uter ("the Uter/Merrill agreement")—is unrelated to the subject of the pooling agreement.[2] Since the Uter/Merrill agreement does not vary the terms of the pooling agreement, evidence of the earlier agreement was properly admitted and considered. The evidence also cannot be excluded from consideration for a more fundamental reason—Peacock failed to raise on objection at trial based on the merger clause. *See Michael Linet,* 408 F.3d at 763 (movant cannot rely on arguments that could have been presented at trial).

Even if Peacock could negate evidence of the Uter/Merrill agreement, that would not establish Uter's ownership—certainly not by the great weight of the evidence. Therefore, Peacock goes a step further, citing the pooling agreements as evidence to establish that Uter was a 15% owner. Her argument is as follows: (1) Uter signed the pooling agreements as an owner; (2) The remaining owners, who also signed the pooling agreement, collectively owned 85%; (3) Therefore, Uter must own 15%. If determining

---

[2] According to trial testimony, the pooling agreements were intended to reallocate certain stock and ownership interests in the Floragon companies in exchange for an infusion of capital by the Merrills, but the reallocation did not include the stock involved in the Uter/Merrill agreement

4

ownership were that simple, a large portion of the trial would have been unnecessary. Suffice it to say, Peacock's argument is unpersuasive.

**The IRS Forms**

Similar to the previous claim, this weight-of-evidence argument requires complete disregard of substantial portions of the Merrills' testimony. The Merrills testified that Uter was never an owner, that he had only a contract to purchase a 15% interest in Floragon and that he was treated as an owner as long as he was under contract to purchase. When it became clear that Uter could not fulfill his financial obligation under the contract, he no longer had ownership status. Peacock insists that the Merrills' testimony denying Uter's ownership interest cannot be considered because it is contradicted by verified IRS forms, signed by the Merrills under penalty of perjury. Peacock's claim is based on a faulty premise, i.e., that statements made under penalty of perjury somehow override a witness's trial testimony. The Merrills' testimony could have been, and was, challenged by their previous verified statements. However, apparently the jury believed the Merrills' testimony at trial.

**Legal Title/Equitable Title**

Peacock asserts that the great weight of evidence establishes that she had either legal title or equitable title to 15% of the Floragon companies. This claim is meritless. Peacock's separation of "legal title" and "equitable title", and the evidence related to each, is a distinction without a difference.[3] At trial, the ownership issue was broadly framed. The jury was asked to decide whether Marion Uter had a 15% ownership interest

---

[3] On summary judgment, the Court rejected the Merrills' argument that the Peacock could not recover because she never acquired legal title, i.e., stock certificates, holding "that lack of a stock certificate does not defeat a party's claim of ownership in a corporation." (Sum. Jdgt. Ord., Doc. 595, at 19.)

in Floragon in March 2002 (the date he allegedly sold it to Peacock), and it found that he did not. Thus, Peacock's evidence of Uter's ownership—whether legal ownership or equitable ownership—was rejected by the jury.[4] No matter how Peacock categorizes the evidence favorable to her, it is not of sufficient weight to override the jury's verdict.

### **The Batson Ruling**

Peacock contends that she is entitled to a new trial because the Court erred in denying her *Batson* challenge. At jury selection, Peacock's counsel raised a *Batson* objection[5] to the Merrills' use of their peremptory challenges. The basis for the objection was that "all the strikes by the defendant were African American jurors." (Jury Selection Tr., Doc. 713-1, 7-8.) When given further opportunity to make a prima facie case, counsel added: "[W]e don't see that any of the 3 jurors struck answered any questions during the voir dire examination that would give cause for striking them or answered any questions. And they all are African American." *Id*. The Court found that Peacock had failed to make a prima facie showing that the Merrills had exercised their peremptory strikes in a racially discriminatory manner and denied the objection. In her motion for new trial, Peacock renews her argument that the Merrills' use of all three of their strikes on African-American jurors creates a prima facie case of discrimination.

Peacock's argument has no more validity now than it did at trial. The Eleventh Circuit has held:

> While it is true that striking a black venireperson for racial reasons violates the Constitution, it is not true that all peremptory strikes of black

---

[4] As discussed above, *supra* at 5, the Merrills presented evidence that Uter never completed his agreed-upon purchase of the 15% interest in Floragon.

[5] In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court held that a prosecutor's race-based exercise of peremptory challenges is unconstitutional. The Court subsequently extended *Batson* to civil cases, holding that the race-based exclusion of civil jurors "violates a prospective juror's equal protection rights." *Edmondson v. Leesville Concrete Co., Inc.,* 500 U.S. 614, 628-29 (1991).

> venirepersons are for racial reasons. In making out a prima facie case, "the defendant must point to more than the bare fact of the removal of certain venirepersons and the absence of an obvious valid reason for the removal."

*United States v. Allison*, 908 F.2d 1531, 1537-38 (11th Cir. 1990) (quoting *United States v. Young-Bey,* 893 F.2d 178, 179 (8th Cir.1990)). While Peacock argues, correctly, that the Court must consider the totality of the circumstances in deciding whether there is a prima facie case of discrimination under *Batson*, she points to nothing other than the "bare fact" that the defendants used their three strikes to remove African-American jurors. For statistical evidence to support an inference of discrimination, it must be considered in context of all other relevant information including the racial composition of the venire, the racial composition of the jury and the like. *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1044-45 (11th Cir. 2005). It is true that a party's use of all of its peremptory challenges against members of a racial or ethnic group is *one* factor to be considered. *Id*. But that factor stands alone here, and its significance is greatly diminished in this case by the negligible number involved. Absent some additional evidence, three strikes do not amount to a prima facie case of discrimination.

**Hearsay Evidence & The Business Records Exception**

Peacock asserts that the court erred in ruling that notes taken at a business meeting were not admissible under Fed. R. Evid. 803(6), the business records exception to the hearsay rule. The notes were personal notes taken by Howard Page, a Floragon stockholder and officer, at a company meeting. Peacock failed to lay the foundation for admissibility, which would have required testimony from Floragon's records custodian that the notes were Floragon's business records kept by Floragon in the regular course of its business activity. *See* Fed. R. Evid. 803(6). Even if failure to admit the notes had

been error, a new trial is not justified unless the error caused substantial prejudice  *See In re Kelloggi*, 197 F.3d at 1119 (new trial required only where there are manifest errors of law or fact); *see also Goodman v. Pennsylvania Turnpike Comm'n*, 293 F.3d 655, 675 (3d Cir. 2002) (new trial cannot be granted based on harmless error).  The prejudice is not obvious here, and Peacock has failed to explain how the absence of Page's notes affected the outcome of the trial.

**Conclusion**

For the reasons set forth above, the motion for new trial is without merit and is, therefore, **DENIED**.

**DONE** and **ORDERED** this the 18th day of May, 2010.

/s/ Kristi K. DuBose  
**KRISTI K. DuBOSE**  
**UNITED STATES DISTRICT JUDGE**